UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAOMI TOUVIAN,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant*.

Civil Action No. 17-cv-1818 (DLF)

## MEMORANDUM OPINION

In the fall of 2016, Naomi Touvian informed her employer that she would miss seven days of work in October to observe Jewish holidays. Touvian alleges that a trio of adverse actions were taken to retaliate against her for this and related events, and she asserts retaliation claims under Title VII and the D.C. Human Rights Act. Before the Court is the defendant's motion to dismiss for failure to state a claim. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

The District of Columbia Public Schools system (DCPS) hired Naomi Touvian in the summer of 2016 as a speech pathologist at Barnard Elementary School. Compl. ¶¶ 12, 14. Touvian reported to Dr. Maribel Vargas, who supervised Touvian's caseload and day-to-day activities, and to Ms. Tiffany White, who served as Touvian's clinical supervisor. *Id.* ¶ 16.

---

[1] The facts here are recited as alleged in Touvian's Second Amended Complaint, Dkt. 23, and are assumed true, as they must be in considering a motion to dismiss. *See Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018).

About two weeks after beginning work, Touvian emailed Vargas and White to request leave for seven days in October so that she could observe the Jewish holidays of Rosh Hashanah, Yom Kippur, and Sukkot. *Id.* ¶¶ 17–19. A week later, Vargas summoned Touvian to her office, explained that "[i]t is a lot of days and I don't like it," and said "I know there is nothing you can do about it, but I am going to report it to your supervisor." *Id.* ¶ 22. Vargas then "reprimand[ed]" Touvian and said she had emailed the head of the Speech-Language Department to "report[]" Touvian and to "express[] her dissatisfaction" with Touvian's request. *Id.* Touvian became upset and did not report to work the next day; instead, she emailed Dr. Grace Reid, Barnard Elementary's principal, and relayed the statements Vargas had made. *Id.* ¶ 24.

When Touvian returned to work on September 8, she was "shunned by her coworkers," including Reid, as "[o]ffice and administrative staff avoided her at every turn" and "people physically turned away from her." *Id.* ¶ 25. She "received the same unwelcome and cold treatment from her coworkers again on September 9th." *Id.* ¶ 27. Touvian felt it was "impossible for her to continue working at [Barnard]," and she did not return. *Id.* ¶¶ 27–28. She was later transferred to two other schools within the DCPS system. *Id.* ¶ 28.

On September 20, Touvian and her attorneys met with DCPS representatives—including Vargas and Reid—and Touvian complained about the treatment she received from Vargas and her coworkers. *Id.* ¶¶ 29–30. DCPS agreed to "take certain steps" to avoid similar incidents in the future, but to date, DCPS has "not taken such actions" and has not come to any agreement with Touvian. *Id* ¶ 30.

Touvian continued to work at two other DCPS schools until December 2016, when she traveled abroad to care for a sick family member. *Id.* ¶ 31. Upon her return in January 2017, DCPS informed Touvian that "her position . . . was no longer available to her." *Id.* Touvian

2

applied for other positions with DCPS between January and March, and though she received one interview, she was never offered a job. *Id.* ¶¶ 33, 39–41. Touvian pursued administrative remedies with the EEOC, and after the EEOC issued a dismissal and notice of rights, she brought suit in this Court. *Id.* ¶¶ 43–46.

## II. LEGAL STANDARDS

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing a 12(b)(6) motion, the Court will construe the complaint liberally in favor of the plaintiff and will grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged," but the Court need not accept legal conclusions or inferences unsupported by the facts alleged. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018). The Court will grant a motion to dismiss only where a plaintiff's "well-pleaded factual allegations," even if true, do not "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Title VII forbids employers from "discriminat[ing] against any of [their] employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To prevail on a retaliation claim, a plaintiff must show:

(1) that he opposed a practice made unlawful by Title VII;
(2) that the employer took a materially adverse action against him; and
(3) that the employer took the action "because" the employee opposed the practice.

*McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). The D.C. Human Rights Act requires the same showing. *See McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 154 (D.D.C. 2014); *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994).

## III. ANALYSIS

Touvian alleges three instances of protected activity and three corresponding adverse actions: (1) that Touvian's email requesting time off to observe Jewish holidays was protected activity, and that Vargas's criticism and threats constituted adverse action; (2) that Touvian's email to Reid reporting Vargas's behavior was protected activity, and that the subsequent workplace shunning constituted adverse action; and (3) that Touvian's meeting with DCPS officials to complain about Vargas, Reid, and the shunning was protected activity, and that DCPS's termination of and refusal to rehire her constituted adverse action. For the reasons that follow, the Court will grant DCPS's motion to dismiss Touvian's retaliation claims insofar as they rely on the first and second theories, but will allow Touvian's third retaliation claim to proceed.[2]

### A. Touvian's Request for Leave

Touvian's first retaliation claim fails because her allegations, even if true, do not satisfy the first element of a retaliation claim: opposition to an unlawful employment practice. Touvian claims she sent an email to her supervisors requesting seven days of leave to observe Jewish holidays. Compl. ¶¶ 17–19. But "a request for leave for purposes of religious observance, standing alone, does not constitute protected activity as defined by Title VII." *Payne v. Salazar*,

---

[2] Touvian's complaint lists only two counts, based on the same set of facts: retaliation under the D.C. Human Rights Act and retaliation under Title VII. Compl. at 10–14. Though she does not style her "three" retaliation claims as separate counts, the Court distinguishes among them for clarity of analysis.

899 F. Supp. 2d 42, 52 (D.D.C. 2012). Because Title VII's anti-retaliation provision requires "oppos[ition]" to an unlawful employment practice, an employee "must in some way allege unlawful discrimination" for her conduct to qualify as protected activity. *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Here, Touvian did not "oppose" or "allege" anything; she simply requested leave. That is not enough.[3]

Even if it were, Vargas's alleged response—stating "[i]t is a lot of days and I don't like it" and "I know there is nothing you can do about it, but I am going to report it to your supervisor," as well as a "reprimand" and email "reporting" Touvian, Compl. ¶ 22—does not rise to the level of an adverse employment action. For purposes of retaliation claims, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In making that determination, "[c]ontext matters," and "the significance of any given act of

---

[3] The Court notes a division of authority on the issue whether a request for religious accommodation constitutes protected activity for purposes of a retaliation suit. *Compare, e.g.*, *Payne*, 899 F. Supp. 2d at 52 (request for religious accommodation not protected activity under Title VII), *and Johnson v. UPS*, No. 17-1771, 2018 WL 3956623, at *8 (plaintiff failed to state retaliation claim "to the extent she alleges that she was retaliated against for simply requesting a religious accommodation"), *with, e.g.*, *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) (request for accommodation is protected activity under ADA), *and* EEOC Compliance Manual § 12-V-B ("EEOC has taken the position that requesting religious accommodation is protected activity."). *See also Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) (noting it is "questionable" whether accommodation request under ADA constitutes protected activity under "the literal language of the statute" but assuming for sake of argument that it does and noting it would "seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge"). However, based on the plain language of the statute—which requires "oppos[ition]" to "an unlawful employment practice"—and on the D.C. Circuit's statement in *Broderick* that complaints "must in some way allege unlawful discrimination" to constitute protected activity, 437 F.3d at 1232, the Court concludes that merely requesting a religious accommodation is insufficient for Title VII retaliation claims.

retaliation will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 69. Because "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm," courts must "separate significant from trivial harms" and be mindful that Title VII "does not set forth 'a general civility code for the American workplace.'" *Id.* at 67–68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Here, Vargas's statements would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination." "[S]poradic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims." *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008). Even taking all of Touvian's allegations as true, Vargas's statements were considerably more tame than other statements that the D.C. Circuit has held do not amount to materially adverse actions. *See, e.g.*, *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010) (finding COO's statement "[y]our career is dead in EDF if you file the claim" insufficient in light of company's extensive efforts to accommodate plaintiff); *Baloch*, 550 F.3d at 1199 (finding supervisor's "profanity-laden yelling . . . did not meet the requisite level of regularity or severity to constitute material adversity for purposes of a retaliation claim"). And though Touvian argues that Vargas's actions implicitly threatened her with termination, cases in this circuit have required more than the statements alleged here to allow such an inference. *Compare Baloch*, 550 F.3d at 1199 (no adverse action where supervisor proposed two-day and thirty-day suspensions, issued a letter of counseling and letter of reprimand, and gave an unsatisfactory performance review), *with Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 93 (D.D.C. 2010) (adverse action where supervisor told employee "he would have to choose between his job and his religion" or else face "ramifications").

6

### B. Touvian's Complaint to the Principal

After her interaction with Vargas, Touvian alleges that on September 7 she emailed Barnard's principal, Reid, to inform her of Vargas's statements. Compl. ¶¶ 22–24. The District concedes that this email "could potentially constitute protected activity." Def.'s Mot. to Dismiss, Dkt. 24 at 10. For the next two days—which ended up being Touvian's last days at Barnard— her coworkers, including Reid, "shunned" her, "avoided her at every turn," and "physically turned away from her." Compl. ¶¶ 25–27. Touvian alleges that she had no issues with her coworkers before her disagreement with Vargas, and that these issues were "the direct result" of her accommodation request and report to Reid. *Id.* ¶¶ 26, 54.

Touvian characterizes the shunning as a "hostile work environment," and her theory of the case is that DCPS "took material adverse action against [her] *by subjecting her to a hostile work environment* where all of her coworkers shunned her by refusing to look at her or speak to her." *Id.* ¶ 53 (emphasis added). This circuit "ha[s] recognized a special type of retaliation claim based on a 'hostile work environment.'" *Baird v. Gotbaum (Baird II)*, 792 F.3d 166, 168 (D.C. Cir. 2015) (citing *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006)). The acts "must be 'of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment.'" *Id.* at 169 (quoting *Hussain*, 435 F.3d at 366). In assessing severity and pervasiveness, courts look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Touvian's allegations of a two-day "shunning" do not meet this standard. In *Baird II*, the D.C. Circuit rejected a retaliatory hostile work environment claim where the plaintiff had alleged "name-calling, rude emails, lost tempers and workplace disagreements." 792 F.3d at 171–72.

7

The *Baird II* court concluded that the employer's "failure to remedy the various critiques and epithets to which Baird's fellow employees subjected her would [not] have persuaded a reasonable employee to refrain from making or supporting charges of discrimination." *Id.* (quoting *Baird v. Gotbaum (Baird I)*, 662 F.3d 1246, 1250 (D.C. Cir. 2011)).[4] And the two cases Touvian relies on—*Bergbauer v. Mabus*, 810 F. Supp. 2d 251 (D.D.C. 2011) and *Leach v. Nat'l R.R. Passenger Corp.*, 128 F. Supp. 3d 146 (D.D.C. 2015)—both involved conduct more serious than Touvian alleges. *Bergbauer* involved not just isolation from coworkers but also letters of reprimand, changes in supervisors, changes in job responsibilities, a poor performance review, and loss in pay. 810 F. Supp. 2d at 259–60. And *Leach* was worlds away, involving "near-constant harassment and hostility" that included sexually explicit drawings on the employee's work space and identification tag, suggestive photos of women on public bulletin boards, inappropriate jokes and language, verbal and written insults such as "freak ho" and "bitch," threats of physical harm, and unwelcome sexual advances (to list just a few examples). 128 F. Supp. 3d at 151. By contrast, two days of the cold shoulder from coworkers is

---

[4] There is some tension inherent in the proper standard for a retaliatory hostile work environment claim. On the one hand, the term "adverse action" has a "broader meaning" in the retaliation context than in the discrimination context: in the retaliation context, "actions giving rise to claims are 'not limited to discriminatory actions that affect the terms and conditions of employment,' but reach any harm that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Baird I*, 662 F.3d at 1249 (internal citation omitted) (quoting *Burlington*, 548 U.S. at 64, 68). On the other hand, in analyzing retaliation claims in which the alleged retaliation is a hostile work environment, the D.C. Circuit appears to have applied the "severe or pervasive" standard from standalone hostile work environment cases. *See, e.g.*, *Baird II*, 792 F.3d at 168–72 (citing *Hussain*, 435 F.3d at 366).

Here, any tension in the proper standard is immaterial, because Touvian's allegations that her coworkers ignored her for two days cannot meet *Burlington*'s "well might have dissuaded" standard or the higher "severe or pervasive" standard.

insufficient: "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence [as to amount to adverse action]." *Burlington*, 548 U.S. at 68.[5]

C.  **Touvian's Meeting with DCPS Officials**

The District concedes that Touvian has "potentially" alleged that she engaged in protected activity with respect to both her September 7, 2016 email to Reid and her September 20, 2016 meeting with DCPS officials. *See* Def.'s Mot. to Dismiss, Dkt. 24 at 10 ("If Plaintiff's description of the other two purported acts are true, they could potentially constitute protected activity."); *see also Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) ("It is well settled that Title VII protects informal, as well as formal, complaints of discrimination."); *Mansfield v. Billington*, 432 F. Supp. 2d 64, 73 n.3 (D.D.C. 2006) ("The defendant does not dispute that the plaintiff's letter to her supervisors is a protected activity under Title VII."). The District also concedes that Touvian's January 2017 termination and DCPS's refusal to rehire her were material adverse actions. Def.'s Mot. to Dismiss, Dkt. 24 at 10. It contests only the third element, causation, arguing that Touvian has failed to "allege facts showing a plausible causal connection between the meeting [with DCPS officials] and her termination and lack of rehire"

---

[5] In a separate section of her opposition to the motion to dismiss, Touvian points out that the D.C. Circuit reversed a district court's grant of summary judgment where the employee showed *both* that her employer "posted her EEO complaint on the [workplace] intranet, where her fellow employees could and did access it," *and* that her employer "increased her workload to five to six times that of other employees." *Mogenhan*, 613 F.3d at 1166. The D.C. Circuit concluded that these two facts, "perhaps alone but certainly in combination," sufficed to send the case to a jury. *Id.* at 1166–67. But the Court declines to extend *Mogenhan* to this case. First and most obviously, there is no allegation of a retaliatory "five to six times" increase in workload, and *Mogenhan* is unclear about whether posting the complaint alone would have sufficed. Second, there is no allegation that DCPS officials publicly posted Touvian's email; at most, one could infer from the allegations that Touvian's coworkers learned about Touvian's complaint from Vargas or Reid. And third, finding an adverse action here—where Touvian alleges nothing more than two days of the silent treatment from her coworkers—would be in tension with other D.C. Circuit cases that have rejected adverse action findings in more egregious circumstances. *See supra* at 6–8.

9

and that "the lapse of time between when [Touvian] engaged in protected activity and the alleged adverse personnel actions makes causation even less plausible." *Id.* at 10–11.

The Court concludes that Touvian's factual allegations suffice to survive a motion to dismiss. "[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). The District focuses on the lack of any connection between Touvian's complaints to DCPS officials and DCPS's decision to terminate and refuse to rehire her. But as Touvian points out, "at this stage of the pleadings, where discovery has yet to occur, all internal documents between Dr. Vargas, the DCPS representatives and any hiring staff are in the sole possession of" DCPS. Pl.'s Opp'n, Dkt. 26 at 17. The District counters by citing *Williams v. Spencer*, 883 F. Supp. 2d 165 (D.D.C. 2012), for the proposition that "action which occurs more than three months after the protected activity is not likely to qualify for . . . a causal inference." *Id.* at 178. But first, "[t]he contours of th[e] time limit test . . . are not entirely clear." *Robinson v. Ergo Solutions, LLC*, 85 F. Supp. 3d 275, 282 (D.D.C. 2015) (collecting cases and denying motion to dismiss where time gap was five months). Second, the District has not put forward any alternative explanation for Touvian's termination or DCPS's refusal to rehire her. *Cf. id.* (noting that "in the absence of any explanation" from the employer, the plaintiff had "raise[d] an inference that only retaliatory animus could explain" the alleged adverse action). Third, *Williams* was a summary judgment decision in which the plaintiff lacked any direct evidence connecting her protected activity to her employer's adverse action. A plaintiff who has direct evidence need not rely on such an inference based on temporal proximity. *See, e.g.*, *Craig v. Dist. of Columbia*, 881 F. Supp. 2d 26, 35 (D.D.C. 2012) ("[T]emporal proximity is one way of proving causation, but it is not the

only way."). And fourth, Touvian has persuasively argued that discovery might uncover direct evidence of retaliatory motive. *See* Pl.'s Opp'n, Dkt. 26 at 18 (noting that whoever decided not to rehire Touvian likely would have corresponded with her previous supervisors, and that Touvian's previous supervisor, White, was also her interviewer for potential rehire); *cf. also Tallbear v. Perry*, No. 17-0025, 2018 WL 3553346, at *6 (July 24, 2018) (granting motion to dismiss where "[t]he only possible causal inference that might be drawn from the complaint [was] one from temporal proximity," the time gap was eight months, and the alleged adverse action came from separate agency). In light of this, at the motion to dismiss stage, the Court cannot rule out the possibility that discovery will yield such direct evidence.

## CONCLUSION

For the foregoing reasons, the Court grants DCPS's motion to dismiss in part and denies it in part. A separate order consistent with this decision accompanies this memorandum opinion.

                                                                                         _____
                                                                                         DABNEY L. FRIEDRICH
                                                                                         United States District Judge

Date: September 7, 2018